# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-03052-RM-NYW

CARA R. DENNEY,

      Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

      This civil action comes before the court on the Administrative Record, [#16, filed April 28, 2017], and the Parties' Joint Motion for Determination on the Record ("Joint Motion"). [#38, filed November 27, 2017]. The Joint Motion was referred to the undersigned Magistrate Judge pursuant to the Order Referring Case dated February 6, 2017, [#12], and the memorandum dated November 27, 2017, [#39]. The undersigned Magistrate Judge has reviewed the Administrative Record, the associated briefing, the case file, and the applicable law, and, for the reasons stated below, respectfully **RECOMMENDS** that the court **REMAND** the decision to the Plan Administrator.

## BACKGROUND

### Underlying Facts

      On December 13, 2016, Plaintiff Cara Denney ("Plaintiff" or "Ms. Denney") initiated this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101, *et seq.*, seeking long-term disability benefits pursuant to a Group Long Term Disability

Plan ("Plan"), administered by Defendant Unum Life Insurance Company of America ("Unum"), and made available through Plaintiff's employer, Wagner Equipment Company ("Wagner"). The Parties agree that Plaintiff's claim is governed by ERISA, and the court exercises subject matter jurisdiction pursuant to 29 U.S.C. § 1132(a)(1)(B).

Plaintiff previously worked full-time for Wagner as a Computer and Technology Instructor. [#1 at 3]. She asserts that the position "required extensive computer use" and "the ability to instruct employees on the use of various computer systems," [*id.*], and further required that she travel up to 50 percent of the time, stand and/or walk more than one third of the workday, and lift up to twenty-five pounds. [#23 at 2; #16-5 at 80-82].[1] [2]

Plaintiff was 37 years old in 2015 when she underwent bilateral reconstructive surgery on her feet. June 22, 2015 marked Plaintiff's last day of full-time work; she underwent surgery on her left foot the following day, and underwent surgery on her right foot on July 20, 2015. [#1 at 3; #16-1 at 12-15; #16-28 at 848-851; #16-46 at 1567-1568]. During this time, Plaintiff sought and received short-term disability benefits under the Plan. [#1 at 3]. Her surgeon, Joseph Mechanik, D.P.M., predicted that Plaintiff would require an extended recovery period of up to six months, and that she could return to work on December 31, 2015. [#16-5 at 67-69, 73; #16-1 at 13-14; #16-4 at 53; #16-17 at 464; #16-28 at 848-851]. With Dr. Mechanik's approval, Plaintiff began working part-time beginning October 5, 2015. [#16-1 at 12-14; #16-4 at 51-55; #16-5 at 68, 73].

---

[1] Defendant disputes in part Plaintiff's recitation of the job's physical demands, but agrees the occupation is not sedentary. *See* [#16-11 at 246; #16-17 at 487-488].

[2] For consistency and ease of reference, this Recommendation utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file. For the Administrative Record, the court refers to the page number associated with the Record, which is found in the bottom right-hand corner of the page. For documents outside of the Administrative Record, the court refers to the page number assigned in the top header by the ECF system.

Plaintiff has a history of lower back pain dating to the occurrence of two herniated disks, for which she underwent an L4-S1 lumbar fusion in October 2001. *See, e.g.,* [#16-16 at 435]. While she reported to her physicians that she had experienced intermittent "flareups," since having the lumbar fusion, and that she had been diagnosed with "failed back surgery syndrome," she stated that she had had good results from the lumbar fusion "and overall improvement of her severe pain from the surgery." [*Id.*] While participating in physical therapy following the bilateral reconstructive surgery on her feet, Plaintiff began to experience severe neck and back pain. *See* [#16-1 at 13-15]. Dr. Mechanik referred Plaintiff to Michael Gesquiere, M.D., a Pain Management Specialist, whom Plaintiff first saw on September 10, 2015. [#16-16 at 433-434]. Plaintiff received care from Dr. Gesquiere for chronic low back pain related to the lumbar fusion and for neck pain. Dr. Gesquiere subsequently referred Plaintiff to Christopher LaFontano, D.O., a neuromuscular specialist, for evaluation and osteopathic manipulation treatment for her neck and back pain, and she was initially evaluated and treated by Dr. LaFontano on October 19, 2015.

Following an exam on December 14, 2015, Dr. Mechanik restricted Plaintiff to no more than fifteen minutes of standing per hour, for a total of forty-five minutes per day, and maintained Plaintiff's restriction of part-time work, extended through February 2016. [#16-1 at 13-15; #16-4 at 54-55; #16-5 at 74-75; #16-28 at 848-851; #16-30 at 941]. Due to the neck and back pain that Plaintiff was experiencing, Dr. Mechanik restricted Plaintiff from lifting weight over ten pounds and from bending or stooping. [#16-43 at 1446]; *see* [#16-16 at 412-414]. Plaintiff continued working part-time until January 11, 2016, when, following a medical exam, Dr. LaFontano recommended that she stop working entirely. He wrote that he had treated Plaintiff on five occasions since October 19, 2015, which he identified as the onset of her back

condition, and that she was unable to sit or stand for prolonged periods of time, could not lift more than ten pounds, and should not extend her arms for more than ten to twenty minutes. [#16-5 at 77; #16-39 at 1302-1303]. Dr. LaFontano opined that Plaintiff's neck and back pain was disabling and he restricted her from working altogether. [#16-5 at 78]. *See* [#16-1 at 12-15; #16-3 at 45; #16-4 at 46-47]. In the following months, Dr. LaFontano opined that these restrictions were likely permanent, and that another surgery may be required. [#16-4 at 45-47; #16-37 at 1226-1229; #16-38 at 1231-1234, 1239-1243; #16-39 at 1302-1307]. On January 26, 2016, Dr. Gesquiere opined that Plaintiff suffered from a chronic pain syndrome, lumbar postlaminectomy syndrome, cervicalgia with myofascial pain, and a C5-6 right side para-central disc protrusion. [#16-16 at 435-436].

Plaintiff filed a claim for long-term disability ("LTD") benefits, based on the condition of her feet and back. [#23 at 19]. Plaintiff represented in the Disability Claim Form dated January 12, 2016 that her medical condition was "back pain, pinched nerve (2), radiating pain," and she described first experiencing the symptoms after the bilateral foot surgery, "I had bilateral foot surgery…while I was recuperating I started having excessive back pain, radiating pain and numbness." [#16-3 at 40]. On April 22, 2016, Defendant denied the claim, finding that Plaintiff was disabled from June 23, 2015 through December 14, 2015, and thus for only 175 days of the 180-day elimination period, which ended December 19, 2015. The denial notice stated, "We have determined you are able to perform the duties of your occupation on a full-time basis prior to the end of the 180 day elimination period and benefits are not payable." [#16-29 at 910-915]. The Parties agree that Plaintiff's disability extended 175 days, [#23 at 10; #16-1 at 13-15], but disagree as to whether she was thereafter disabled.

On June 1, 2016, Plaintiff provided Unum with updated medical records from Dr. LaFontano and Dr. Mechanik. *See* [#16-32 at 1034]. She appealed Unum's decision the following day. [#16-42 at 1413-1415]. Unum asserts in its Response Brief that Plaintiff's appeal focused on Dr. Mechanik's opinion that she was restricted to part-time work on and after December 14, 2015, and the assertion that her feet and back issues were interrelated. [#29 at 16]. *See* [#16-42 at 1414].[3] Unum framed the appeal as follows:

> Does the available information support a loss of functional capacity relating to established medical conditions noted above and the insured's reports of symptoms including (chronic back, neck and foot pain), so as to prevent reliable sustained functional activity (as noted below) as of 6/23/15-12/19/15 (EP) and beyond?

[#29 at 17; #16-45 at 1546-47]. Unum denied the appeal by letter dated August 19, 2016, and states in its Response Brief that it found that Plaintiff "was able to perform the duties of her occupation as of December 14, 2015, prior to the date that LTD benefits begin." [#29 at 20; #16-47 at 1589-96]. Plaintiff filed a second, voluntary appeal, *see* [#16-48 at 1620-1622, 1625, 1636-1637], and Unum issued its final decision denying the claim on November 21, 2016. *See* [#16-48 at 1649].

### The Policy

Unum issued Group Policy No. 418405 002 (the "Policy") to Wagner to fund the LTD benefits under the Plan. [#16-7 at 128; #16-8 at 163]. The "summary plan description and the policy constitute the Plan." [#16-8 at 162].

The Policy requires a claimant to submit proof of loss showing that he or she is disabled under the Policy's terms and conditions. [#16-7 at 133]. Unum asserts that "[t]he test of the

---

[3] Plaintiff's counsel also argued at that time that, under Tenth Circuit law, Unum was required to consider his client's actual job duties, [#16-42 at 1415 n.3].

Plan's definition of disability initially is whether a claimant is able to perform the duties of her

own occupation." [#29 at 1-2]. The Policy defines Own Occupation Disability as follows:

> - you are limited from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
>
> - you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.
>
> After 36 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.
>
> You must be under the regular care of a physician in order to be considered disabled.
>
> The loss of a professional or occupational license or certification does not, in itself, constitute disability.

[#16-7 at 142] (emphasis in original).

> The Policy specifies duration of disability as follows:
>
> You must be continuously disabled through your **elimination period**. The days that you are not disabled will not count toward your elimination period.
>
> Your elimination period is 180 days.
>
> In addition, if you return to work while satisfying your elimination period, and are no longer disabled, you may satisfy your elimination period within the **accumulation period**. You do not need to be continuously disabled through your elimination period if you are satisfying your elimination period under this provision. If you do not satisfy the elimination period within the accumulation period, a new period of disability will begin.
>
> Your accumulation period is 360 days.

*Id.* (emphasis in original). The Policy defines elimination period to mean "a period of

continuous disability which must be satisfied before you are eligible to receive benefits from

Unum," and accumulation period to mean "the period of time from the date disability begins

during which you must satisfy the elimination period." [#16-8 at 158]. The Policy provides that

6

if a person works while disabled, "the days you are disabled will count toward your elimination period." [#16-7 at 142].

## STANDARD OF REVIEW

Unum has discretionary authority to determine claims for benefits under the Policy, including the discretionary authority to determine whether a claimant meets the definition of disability. [#16-7 at 142, 133; #16-8 at 162-164]. Ordinarily, the fact that the Plan delegates discretionary authority to Unum would result in review of the administrator's decision by the court pursuant to an abuse of discretion standard. *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1157 (2010) (citations omitted); *see Weber v. GE Group Life Assurance Co*., 541 F.3d 1002, 1011 (10th Cir. 2008) (describing terms "arbitrary and capricious" and "abuse of discretion" as interchangeable in this context). Under such a standard, the court will uphold the administrator's determination "so long as it was made on a reasoned basis and supported by substantial evidence," *Van Steen v. Life Ins. Co. of N. Am.*, 878 F.3d 994, 997 (10th Cir. 2018). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker," *Caldwell v. Life Ins. Co. of N. Am.,* 287 F.3d 1276, 1282 (10th Cir. 2002) (alteration, quotations omitted), and "[t]he substantiality of the evidence is evaluated against the backdrop of the administrative record as a whole." *Adamson v. Unum Life Insurance Co. of America,* 455 F.3d 1209, 1212 (10th Cir. 2006) (citations omitted). Interpretation of the terms in a plan is arbitrary and capricious if it is unreasonable based on the plain language in the plan, made in bad faith, or severely undermines the policy concerns underlying ERISA. *Torix v. Ball Corp.*, 862 F.2d 1428, 1429 (10th Cir. 1988). So long as the basis for the administrator's decision is reasonable, the decision "need not be the only logical one nor even the best one." *Nance v. Sun Life Assur. Co.*, 294 F.3d 1263, 1269 (10th Cir. 2002). In

applying this standard of review, the court considers the evidence before the plan administrator at the time it made the decision to deny benefits. *See id.* Indicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary. *Caldwell*, 287 F.3d at 1282. There are also instances where the court must exercise *de novo* review, even when the plan administrator is vested with discretionary authority. *See Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003). "[T]o be entitled to deferential review, not only must the administrator be given discretion by the plan, but the administrator's decision in a given case must be a valid exercise of that discretion." *Id.*

Here, Defendant contends that the Parties agree that the arbitrary and capricious standard applies. [#29 at 2]. Plaintiff argues in her Opening Brief that "the policy language is not entirely clear," but that it is "at least arguable" that Defendant has such discretion. [#23 at 22]. On Reply, Plaintiff does not respond to Defendant's arguments regarding the applicable standard of review. [#37]. In any event, it is clear the Parties do not agree as to the amount of deference owed to Unum's decision, and Plaintiff argues that Unum's decision "should be given little, if any, deference." [#23 at 25].

An insurance company's dual role as both the claim administrator and the source funding the benefits of an ERISA plan constitutes a conflict of interest for ERISA purposes. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 114, 128 S.Ct. 2343 (2008) (holding an insurer's dual role as administrator and payer of benefits "creates a conflict of interest [such that] a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits.").[4] The conflict is given more weight "when circumstances

---

[4] Prior to *Glenn*, where the insurer had discretionary authority to determine eligibility for benefits and to construe the plan, the Tenth Circuit had shifted the burden to the administrator "to establish by substantial evidence that the denial of benefits was not arbitrary and capricious."

suggest a likelihood that it affected the benefits decision," and less weight "when the conflicted party has taken active steps to reduce potential bias and to promote accuracy." *Cardoza v. United of Omaha Life Ins. Co.,* 708 F.3d 1196, 1202 (10th Cir. 2013). Put another way, "the reviewing court 'must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict." *Caldwell*, 287 F.3d at 1282.

Because it finds that the Plan vests discretionary authority in Unum, and there is no argument that Unum acted outside of that discretion (rather than simply exercising its discretion incorrectly), this court applies the arbitrary and capricious. But like in *Caldwell*, this court finds that it need not address the issue of deference because it concludes that the Plan Administrator's decision must be remanded, without regard to any conflict. For the reasons stated below, this court respectfully RECOMMENDS that this case be remanded for further findings and explanations by Unum.

## ANALYSIS

Plaintiff alleges that at all times relevant to this lawsuit, she "suffered from a sickness/illness," "was unable to perform the essential duties of her own occupation (or any other reasonable occupation) due to said sickness," and "was, and is, unable to perform the essential functions of her own occupation, and/or any other occupation for which she is qualified." [#1 at 4]. Plaintiff argues that Unum improperly analyzed and applied the Policy's language, and that its position misconstrues the terms of the Policy, "including the provisions that permit the

---

*Fought v. Unum Life Ins. Co. of America*, 379 F.3d 997, 1005 (10th Cir. 2004). The *Glenn* Court held that it is not "necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules focused narrowly upon the evaluator/payor conflict," and rather embraced a "combination-of-factors method of review" that allows judges to "tak[e] account of several different, often case-specific, factors, reaching a result by weighing all together." *Glenn*, 128 S. Ct. at 2351. *See Holcomb v. Unum Life Ins. Co. of America*, 578 F.3d 1187, 1192-93 (10th Cir. 2009).

insured to use non-consecutive days of disability to satisfy the elimination period when working." [#23 at 5]. Plaintiff further contends that Defendant did not "fairly consider" her actual job duties at Wagner and impermissibly relied exclusively on the definition of light duty work as found in the U.S. Department of Labor Dictionary of Occupational Titles. [#23 at 29]. With respect to Unum's review of the medical evidence, Plaintiff argues that the denial of LTD benefits is unreasonable because: (1) the decision ignores the medical evidence that recovery from foot surgery prevented Plaintiff from working full time after December 14, 2015; and (2) Plaintiff was rendered disabled by the related back pain by December 14, 2015, when her doctor ordered her not to lift over 10 pounds, "and certainly after January 11, 2016, when she was advised [] to stop working." Finally, Plaintiff asserts that Unum failed to provide her with a complete copy of her claim file during the appeal process. [#23 at 20-21].

Unum asserts it denied Plaintiff's claim based on its determination that Plaintiff did not satisfy the Own Occupation Disability definition. It states that it based its decision to deny Plaintiff's claim for LTD benefits on its "review of her medical records and diagnostic tests, the reports of two Board Certified physicians in the areas of Internal Medicine and Orthopedic Surgery, a review by a Nurse Practitioner, information provided by Denney's treating podiatrist, and a vocational review to determine the physical requirements of Denney's occupation." [#29 at 2, 3].[5] In recommending remand, this court reaches only the arguments related to Unum's interpretation of the Policy, its explanation of the denial of benefits to Ms. Denney, and the interpretation of "own occupation disability."

---

[5] Plaintiff asks the court to award benefits back-dated to the time of Unum's claim denial; Unum asks for a bench trial on the papers.

# I.    Interpretation and Application of Policy Language

Plaintiff asserts that the Policy's language is ambiguous in that it requires a claimant to be "continuously disabled through the elimination period," but also provides that the days a claimant is not disabled will not count toward the elimination period.  Plaintiff argues that the Policy thus permits her "to use non-consecutive days of disability to satisfy the elimination period when working."  [#23 at 5, 7-8].  Plaintiff also asserts that she should have been permitted to meet the 180-day elimination period during the 360-day accumulation period.  *See* [#23 at 5, 7-8].

As noted above, the Policy specifies duration of disability as follows:

You must be continuously disabled through your **elimination period**.  The days that you are not disabled will not count toward your elimination period.

Your elimination period is 180 days.

In addition, if you return to work while satisfying your elimination period, and are no longer disabled, you may satisfy your elimination period within the **accumulation period**.  You do not need to be continuously disabled through your elimination period if you are satisfying your elimination period under this provision.  If you do not satisfy the elimination period within the accumulation period, a new period of disability will begin.

Your accumulation period is 360 days.

[#16-7 at 142 (emphasis in original)].  The Policy defines accumulation period "to mean[] the period of time from the date disability begins during which you must satisfy the elimination period," and elimination period as "a period of continuous disability which must be satisfied before you are eligible to receive benefits from Unum," [#16-8 at 158], and provides that if a person works while disabled, "the days you are disabled will count toward your elimination period."  [#16-7 at 142].

Defendant responds that Plaintiff did not raise these arguments of interpretation during the appeal process, and thus "Unum did not address Denney's proffered construction of the Policy's elimination period in its claim determination," and the court cannot base an award of benefits, or remand the matter, on an argument not raised during the appeal process. [#29 at 34]. Defendant further responds that, "[i]n determining the 180-day elimination period, Unum properly credited Denney for her period of incapacity following surgery and days that she worked part-time while disabled," and that it "reasonably determined, based on all available medical evidence related to Denney's back and feet, that Denney was not disabled when the elimination period expired on December 19, 2015 <u>or after</u>." [#29 at 34-35]. In Reply, Plaintiff argues that the Tenth Circuit has "expressly declined to adopt a rule of issue exhaustion," in ERISA matters, [#37 at 8], and that the lack of clarity in Defendant's basis for denial prevented Plaintiff from sufficiently addressing the determination during the appeal process.

A.    Issue Exhaustion

Defendant cites *Sandoval v. Aetna Life & Cas. Ins. Co.* for the proposition that "[i]n determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only arguments and evidence before the administrator at the time of the decision." 967 F.2d 377, 380 (10th Cir. 1992). This proposition is good law, but applicable in a different context. One of our sister courts to consider an identical contention, that the plaintiff failed to raise an argument during the administrative appeal process, observed that the holding in *Sandoval* concerns a court's consideration of *evidence* that was not before the insurance company on its review of disability. *See Winfrey v. Hartford Life and Accident Ins. Co.*, 127 F. Supp. 3d 1153, 1163 (D. Kan. 2015) (citing *Sandoval*, 967 F.2d at 380) (emphasis added). Plaintiff is not relying on evidence that was never before Unum, but rather is arguing

that Defendant misinterpreted the provision regarding the elimination period and misapplied the provision regarding the accumulation period.

Plaintiff asserts that the Tenth Circuit rejected Defendant's position in *Farr v. Hartford Life & Accident Ins. Co.*, 322 F. App'x 622, 628 (10th Cir. 2009). The *Farr* court stated that the Tenth Circuit, "like others, has recognized an exhaustion rule for ERISA claims derived not from an explicit statutory directive but from 'ERISA's overall structure of placing primary responsibility for claim resolution on fund trustees,'" and thus the Circuit has, accordingly, "applied a rule barring ERISA claims that were not previously pursued administratively (i.e., claim exhaustion)," but has not "extended this rule to bar subsidiary arguments urged on judicial review in support of a claim itself fully exhausted in the administrative process (i.e., issue exhaustion)." *Id.* at 628-29. The *Farr* court concluded by stating that "[t]he parties have thus presented an interesting and complex issue, but as we conclude its resolution is not critical to the outcome of this case, we leave it for another day." *Id.* at 629.

In *Forrester v. Metropolitan Life Ins. Co.*, 232 F. App'x 758, 761 (10th Cir. 2007), the Tenth Circuit similarly addressed but declined to decide whether an issue exhaustion rule applies in ERISA matters. The court considered the Supreme Court's explanation that:

> "[t]he basis for a judicially imposed issue-exhaustion requirement is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts," and, thus, adoption of such a requirement "depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding."

*Id.* at 761-62 (quoting *Sims v. Apfel,* 530 U.S. 103, 120 S.Ct. 2080, (2000)). The *Forrester* court observed that "ERISA, like the Social Security Act, was meant 'to provide a nonadversarial method of claims settlement,'" but declined to otherwise pass on the question. *Id.* at 762 (quoting *Gaither v. Aetna Life Ins.,* 394 F.3d 792, 807–08 (10th Cir. 2004)).

In the year between the *Forrester* and *Farr* decisions, the Supreme Court decided *Glenn* and explained therein:

> ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," [*Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)] (quoting [29 U.S.C.] § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, *see* § 1132(a)(1)(B).

*Glenn*, 554 U.S. 105, 128 S. Ct. at 2350. The notion that an insured should be barred, following the substantive denial of benefits, from challenging how an insurer interpreted and applied policy language, particularly when the basis for the denial is not entirely clear, discussed in more detail below, does not seem consistent with the courts' interpretation of the statute's objectives. *See Gaither v. Aetna Life Ins.,* 394 F.3d 792, 807–08 (10th Cir. 2004) ("While a fiduciary has a duty to protect the plan's assets against spurious claims, it also has a duty to see that those entitled to benefits receive them."). In the absence of Tenth Circuit law to the contrary, this court will consider Plaintiff's arguments regarding construction of the elimination period and accumulation period.[6]

---

[6] The Tenth Circuit has applied claim exhaustion under ERISA. *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir.1998); *Forrester*, 232 F. App'x at 761. But Unum does not argue, let alone brief, the question of whether the court would consider Plaintiff's asserted entitlement to LTD benefits under the accumulation period as a separate ERISA claim, or merely a subsidiary argument to an ERISA claim that has been administratively exhausted. Because this question is not before the court, I do not pass on it.

B.    Elimination Period and Accumulation Period

   1. *Language governing elimination and accumulation periods*

Plaintiff asserts that the Policy allows an insured to use non-consecutive days of disability to satisfy the elimination period. *See, e.g.,* [#23 at 5]. The first two sentences of the Policy's Duration of Disability Provision provide: "You must be continuously disabled through your **elimination period**. The days that you are not disabled will not count toward your elimination period." [#16-7 at 142]. Plaintiff argues that the two sentences contradict each other in that if continuous disability is required, the following sentence would not account for days on which the insured is not disabled. [#23 at 7]. Plaintiff suggests that the following language from the Provision provides circumstances when non-consecutive days of disability may be counted toward the elimination period:

> Can you satisfy the elimination period if you are working? Yes. If you are working while disabled, the days you are disabled will count toward your elimination period.
>
> In addition, if you return to work while satisfying the elimination period, and are no longer disabled, you may satisfy your elimination period within the accumulation period. You do not need to be continuously disabled through your elimination period if you are satisfying your elimination period under this provision…your accumulation period is 360 days

[#16-7 at 142]. Plaintiff asserts that the cited language from the Provision provides that "[e]mployees who return to work while fighting a disabling condition have greater flexibility in satisfying the elimination period," and that this pertains to her because she returned to work part-time beginning October 5, 2015 and continued working part-time until January 7, 2016. [#23 at 7-8]. Plaintiff further asserts that to the extent the language within the Provision is unclear, Defendant is obliged to explain its construction, and Defendant's failure to do so requires remand. [*Id.* at 8].

15

Courts are required to interpret policy language according to its plain meaning. *Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818, 829 (10th Cir. 2008) (citations omitted). Under federal common law, "the proper inquiry is not what [the provider] intended a term to signify; rather, we consider the common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words to mean." *Miller v. Monumental Life Ins. Co.,* 502 F.3d 1245, 1249 (10th Cir. 2007) (internal quotation marks and alterations omitted). "Ambiguity exists when a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." *Admin. Comm. of Wal–Mart Assocs. Health & Welfare Plan v. Willard,* 393 F.3d 1119, 1123 (10th Cir. 2004) (internal quotation marks omitted).[7]

For support, Plaintiff relies primarily on *Mason v. Reliance Standard Life Ins. Co.*, No. 14–cv–01415–MSK–NYW, 2015 WL 5719648 (D. Colo. Sept. 30, 2015). In *Mason*, the plaintiff argued that the insurance company misinterpreted the term "Total Disability" in the governing policy. The court determined that one interpretation of the policy provision at issue was "arguably inconsistent," and would run afoul of the canon that the court strive to construe contract terms harmoniously so as to avoid inconsistencies. *Id.* at *5. The court found that an alternative interpretation added nothing of significance, "its first sentence simply sets up a definition, and its second sentence repeats precisely the same concept embodied in the last sentence [of the subsection]," which result the court found would violate the canon of

---

[7] While courts generally construe ambiguous terms in an insurance contract against the insurer due to the unequal bargaining positions of the parties, *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment and Dependent Life Ins. Plan,* 605 F.3d 789, 804–05 (10th Cir. 2010), the Tenth Circuit has "rejected the application of *contra proferentem* when the plan administrator is given the discretion to interpret the terms of the plan and the arbitrary and capricious standard of review applies." *Adamson*, 455 F.3d at 1215 (citing *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1100-01 (10th Cir. 1999)).

construction that courts avoid contractual interpretations that render a provision superfluous. *Id.* at *6 (citing *Bledsoe Land Co. v. Forest Oil Corp.*, 277 P.3d 838, 846 (Colo. App. 2011)). In concluding that it could discern no clear meaning to the provisions at issue, the court determined it was incumbent on the defendant to both construe those provisions and articulate that construction, and that defendant's failure to do so was significant because plaintiff could arguably qualify for benefits depending on how the term of Total Disability is construed. *Id.*

I respectfully conclude that this action should be remanded to Unum to further clarify the reason or reasons for its denial of Ms. Denney's claim, and then, if relevant, the applicable policy language regarding the elimination and accumulation periods. In reading the policy as a whole, it appears that an insured can satisfy her disability requirement through being disabled for a consecutive 180-day elimination period, or the insured can satisfy her disability requirement through being intermittently disabled for a period of 180 days, so long as those 180 days are within a 360-day accumulation period. [#16-7 at 128-145, #16-8 at 146-171]. But in examining the definitions of each of these time periods in the Glossary of the Policy, the elimination period is defined as 180 continuous days, and the accumulation period is simply, "the period of time from the date disability begins during which you must satisfy the elimination period." [#16-8 at 158]. It is not clear what definition Unum applied when denying Ms. Denney's claim, and this is important because, if Ms. Denney continued to be eligible for LTD for any period after December 14, 2015 extending into 2016, it might have a material impact upon Unum's determination that she failed to meet her elimination period requirement.

Defendant declined to provide a substantive response to Plaintiff's argument in its Response Brief. [#29 at 34 n.7]. The closest Unum comes is stating simply, in a footnote, that "[t]he Policy's plain terms define the elimination period as **a period of continuous disability**."

[#29 at 34 n.6 (emphasis added in brief)]. Instead, Unum contends that "it is not necessary for the Court to resolve any dispute concerning the proper construction of the elimination period under the Policy because Unum determined that Denney did not meet the applicable definition of disability as of December 14, 2015 <u>and after</u>." [*Id.* at 34]. Respectfully, as discussed more fully below, the basis for Unum's decision is not clear from the record.

2. *Basis for Denial*

An insurer's decision for denying a claim must be clear so as to allow the insured an opportunity to properly respond to the denial. *See Rasenack ex rel. Tribolet v. AIG Life Ins. Co.*, 585 F.3d 1311, 1326 (10th Cir. 2009) ("ERISA and the Secretary of Labor's regulations under the Act require 'full and fair' assessment of claims and clear communication to the claimant of the 'specific reasons' for benefit denials.") (quoting *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 825, 123 S.Ct. 1965 (2003)). By statute, every employee benefit plan must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," and "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The regulation governing the ERISA claims procedure requires generally that the plan administrator notify a claimant of an adverse benefit determination with "[t]he specific reason or reasons for the adverse determination," and with "[r]eference to the specific plan provisions on which the determination is based." 29 C.F.R. § 2560.503-1(g)(1)(i)-(ii). Where the denial of disability benefits is concerned, that regulation requires specifically that the plan administrator provide in relevant part "the specific internal rules, guidelines, protocols, standards or other similar criteria

of the plan relied upon in making the adverse determination or, alternatively, a statement that such rules, guidelines, protocols, standards or other similar criteria of the plan do not exist." *Id.* at 2560.503-1(1)(g)(vii)(C). *See Rasenack*, 585 F.3d at 1326 ("In simple English, what [29 C.F.R. § 2560.503–1(f)] calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries. If benefits are denied the reason for the denial must be stated in reasonably clear language[,] if the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it") (quoting *Gilbertson v. Allied Signal, Inc.,* 328 F.3d 625, 635 (10th Cir. 2003) (alterations in original)).

On review of the record, the court finds as follows. On April 22, 2016, Defendant wrote to Plaintiff informing her that her claim had been denied:

> We acknowledge you have advised your back condition impacts your ability to work as of January 8, 2016 and Dr. LaFontano was not opining restrictions or limitations within your 180 day elimination period. However, at the time this condition precluded you from working you were no longer in an eligible group or covered under the policy…
>
> Based on our review, the information in your claim file indicates you are able to perform the duties of your occupation on a full-time basis as of December 14, 2015, prior to the end of the 180 day elimination period.

[#16-29 at 912]. In that letter, Unum quoted the Policy's language regarding the accumulation period:

> In addition, if you return to work while satisfying your elimination period, and are no longer disabled, you may satisfy your elimination period within the accumulation period. You do not need to be continuously disabled through your elimination period if you are satisfying your elimination period under this provision. If you do not satisfy the elimination period within the accumulation period, a new period of disability will begin.

[*Id.* at 913]. Unum also quoted the Policy's language regarding expiration of coverage:

> Your coverage under the policy or a plan ends on the earliest of:
>
> - the date the policy or a plan is cancelled;

- the date you no longer are in an eligible group;
- the date your eligible group is no longer covered;
- the last day of the period for which you made any required contributions; or
- the last day you are in active employment except as provided under the covered layoff or leave of absence provision.

*Id.* Unum acknowledged that Ms. Denney's LTD claim was based both on her foot and back pain. *Id.* at 911. Unum also informed Ms. Denney that its physician did not find support for continuing disability due to her feet beyond her December 14, 2015 office visit to Dr. Mechanik. [*Id.* at 911]. It also indicated that Unum "acknowledge[s] you have advised your back condition impacts your ability to work as of January 8, 2016 and Dr. LaFontano was not opining restrictions or limitations within your 180 day elimination period," which presumably closed on December 19, 2015 (a period of 180 continuous days). [*Id.* at 912 (emphasis added)]. But in this letter, Unum did not make a determination as to whether Ms. Denney was disabled due to her back conditions, or whether she could have satisfied her elimination period with non-continuous days, because it determined that "at the time this condition precluded you from working [January 8, 2016], you were no longer in an eligible group or covered under the policy." [*Id.* at 912].

Then, in its appeal decision dated August 19, 2016, Unum wrote, "[a]lthough Dr. Lafontano is asserting a new date of disability related to her back pain as of January 11, 2016, her Long Term Disability coverage ended as she was no longer in an eligible group or covered under the policy as of December 14, 2015." [#16-47 at 1594 (emphasis added)]. In the same letter, Unum wrote, "[o]ur physician completed a thorough review of the file and determined that your client was not precluded from performing the material and substantial duties of her occupation beyond December 14, 2015 for all of her medical conditions." *Id.* It is unclear from this language whether Unum concluded that Ms. Denney's back and neck pain were not disabling after December 14, 2015, or that the pain did not become disabling until January 11,

2016, but that the condition was immaterial at that time, "after her Long Term Disability Coverage ended as she was no longer in an eligible group or covered under the policy as of December 14, 2015."[8]

Then, in a letter dated November 2, 2016, sent in response to Plaintiff's submission of a personal letter and an additional letter from Dr. LaFontano, Unum again wrote, "[w]e would like to remind you that your client's coverage ended as of December 14, 2015, therefore, any disability arising after this date is not eligible for further review." [#16-48 at 1627 (emphasis added)]. This statement signals that Unum declined to consider any disability after December 14, 2015, and simply refused to consider additional submissions by Dr. LaFontano—even those that suggested that Ms. Denney had been enduring pain "for some time" as of January 7, 2016. Excerpts from Plaintiff's Claim Profile, printed in December 2016, read that Plaintiff "was not incapacitated due to her feet between her 12/14,/15 OV ["outpatient visit"] with Dr. Mechanik and 01/11/16 when she was incapacitated due to her back." [#16-1 at 13]. Therefore, despite the language Unum used in its correspondence to Ms. Denney, there appears to be some indication that Unum considered her disabled as of at least January 11, 2016, but determined that her policy or coverage had expired by that time.[9]

Plaintiff asserts that Unum's alternating bases for denying the claim, i.e., either Plaintiff was capable of full-time work as of December 14, 2015, or Plaintiff did not qualify for coverage

_____

[8] Indeed, if her coverage ended December 14, 2015, Plaintiff would never have been able to satisfy the elimination period, which ended December 19, 2015. If that is the basis of Unum's determination, then any consideration by Unum of Ms. Denney's condition after December 14, 2015 is simply irrelevant.

[9] This court observes that the acknowledgement in the claim notes that Plaintiff was "incapacitated" by her back condition as of January 11, 2016 would seem to cut against Defendant's argument that the plan administrator reasonably found that Plaintiff was not disabled. But again, depending upon the timing of the lapse of Plaintiff's policy, this information may or may not be relevant.

after that date, confused her and prevented her from effectively responding to the basis for the claim denial. *See* [#37 at 5 (Unum "therefore not only failed to alert Ms. Denney that her condition 'beyond" January 8, 2016 was in dispute, it told her information about her health after December 14, 2015 would not be considered.")]. She further argues, cursorily, that Unum's statement that she was no longer in an eligible group or covered by the policy as of January 8, 2018 is inaccurate. [#23 at 19]. Strangely, beyond Plaintiff's passing comment, neither Party addresses when Ms. Denney's LTD coverage lapsed, or whether it in fact remained in place during the relevant time period. This would seem to be a straightforward issue. The Policy specifies that an insured's coverage ends on the earliest of:

-   the date the policy or a plan is cancelled;
-   the date you no longer are in an eligible group;
-   the date your eligible group is no longer covered;
-   the last day of the period for which you made any required contributions; or
-   the last day you are in active employment except as provided under the covered layoff or leave of absence provision.

[#16-7 at 140]. Based on the language of Unum's various correspondence, at some point, either as of December 14, 2015 or January 11, 2016, or somewhere in between, Ms. Denney was no longer in an eligible group, for unspecified reasons, or her eligible group was no longer covered. And despite Unum's argument that it determined that Ms. Denney was simply not disabled for any of her medical conditions after December 14, 2015, it appears that Unum relied upon the termination of coverage to disregard the later submissions by Dr. LaFontano, which arguably pertained to a period dating to January 7, 2018, and perhaps before. *See* [#16-48 at 1649].

"The remedy when an ERISA administrator fails to make adequate findings or to explain adequately the grounds of her decision is to remand the case to the administrator for further findings or explanation." *Caldwell*, 287 F.3d at 1289. This court draws from the rationale set forth in *Winfrey* and *Mason*, and recommends that the matter be remanded to the Plan

Administrator to identify the duration of Ms. Denney's coverage under the Policy, including the date the coverage terminated or lapsed, and to state the specific basis for finding that the coverage terminated or lapsed. To the extent Plaintiff's coverage extended beyond December 14, 2015, the Plan Administrator should provide a clear interpretation of the Policy and explain how the elimination period is applied in conjunction with the accumulation period, i.e., whether the Policy requires 180 days of continuous disability. The Plan Administrator should also determine whether the accumulation period applies to Plaintiff's claim, and explain those findings.[10] It is not appropriate, as this court understands it, for the court to simply proceed to the merits of Unum's arguments, making different assumptions depending on various possible coverage termination dates and weighing the competing outcomes. Indeed, the *Caldwell* court clearly states that "[t]he remedy when an ERISA administrator fails to make adequate findings or to explain adequately the grounds of her decision is to remand the case to the administrator for further findings or explanation," and that "remand for further action is unnecessary only if the evidence clearly shows that the administrator's actions were arbitrary and capricious, or the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." *Caldwell*, 287 F.3d at 1289. Neither of these circumstances is presented here. Based on its review of the records to date, this court's recommendation with regard to the propriety of Unum's actions would likely vary depending on the time period at issue, and it seems inefficient and unnecessarily confusing for this court to offer multiple lines of analysis.

---

[10] There is no argument before the court, or support in the Record, that Ms. Denney could satisfy her elimination period requirement with additional days of disability arising prior to December 14, 2015.

## II. Determination of Own Occupation

So as to properly define the scope of the recommended remand, the court next turns to Plaintiff's arguments with respect to the term "own occupation disability." On January 27, 2016 and February 24, 2016, Unum asked a vocational rehabilitation consultant ("VRC") to determine the physical demands associated with Plaintiff's occupation. The VRC determined that under the Dictionary of Occupational Titles, Plaintiff's position is Training Representative, "which requires occasional exertion up to twenty pounds, frequent exertion up to ten pounds, frequent sitting, keyboarding, occasional standing, walking, reaching, handling and fingering." [#29 at 8; #16-17 at 468].

On February 24, 2016, Unum completed a vocational analysis to determine the material and substantial duties of Plaintiff's occupation. Unum asserts that in conducting the vocational analysis, the VRC considered Plaintiff's job description and Plaintiff's description of her job duties. Unum further asserts that, "based on the Policy's requirement that Denney's occupation must be evaluated as it is performed in the national economy, not at a specific location, the VRC concluded 'with a reasonable degree of vocational certainty' that Denney's occupation in the national economy is most consistent with Training Instructor." [#29 at 9; #16-17 at 487]. The VRC described the physical demands of the Training Instructor position as follows: exert up to twenty pounds of force occasionally; exert up to ten pounds of force frequently; exert a negligible amount of force to constantly lift, carry, push, pull or move objects; sit frequently; keyboard frequently; and walk, stand, reach, handle, and finger occasionally. [*Id.* at 9-10].

On July 22, 2016, during the appeal process, Unum referred the file to a second VRC to determine the material and substantial duties and physical demands of Plaintiff's occupation. [#16-46 at 1555]. *See* [#29 at 18]. The Appeals Specialist instructed the VRC to comment on

travel requirements in light of Wagner's job description for the Computer Instructor position. *Id.* The record shows that the VRC acknowledged that Plaintiff's job required some travel ("[w]hile duly noting the insured's job description reference to a higher frequency of business related travel and to the need to travel on an interstate basis), and that the travel "would typically be completed on a local basis achieved primarily via automobile/driving," but he concluded that "this particular level of travel [is] a job specific requirement of the insured's position with this policyholder and not necessarily representative of the manner in which the overall Training Instructor occupation is performed." [#16-46 at 1556].

Under the Policy, "Own Occupation Disability" occurs when an employee is limited from performing the **material and substantial duties** of [his or her] **regular occupation**. [#16-7 at 142] (emphasis in original). *See* [#29 at 5-6]. The Policy defines "regular occupation" as "the occupation you are routinely performing when your disability begins…Unum will look at your occupation *as it is normally performed in the national economy*, instead of how the work tasks are performed for a specific employer or at a specific location." [#16-8 at 161 (emphasis added)]. The Policy defines "material and substantial duties" in part as those "that are normally required for the performance of your regular occupation…" [*Id.* at 159].

Plaintiff urges the court to find error in Unum's failure to give more consideration to her specific job duty requiring travel. Indeed, the Tenth Circuit has held in instances where language from an LTD benefits plan stated an employee is disabled if he is "unable to perform all the essential duties of his occupation," that "the relevant…standard for 'own occupation' disability is whether [the insured] was capable of performing his *own* job" with his employer. *Caldwell,* 287 F.3d at 1283 (emphasis in original). *Accord Bishop v. Long Term Disability Income Plan of SAP America, Inc.*, 232 F. App'x 792, 794-95 (10th Cir. 2007) (citing *Caldwell*

for guidance that where plan language requires the insurer to consider the insured's "actual job duties" in defining "occupation," failure to address duties specific to the insured's job gives rise to a finding that the administrator's decision was arbitrary and capricious).  *But see Panther v. Synthes (U.S.A.)*, 371 F. Supp. 2d 1267, 1277-78 (D. Kan. 2005) ("The court concludes that Sun Life properly defined 'own occupation' to mean one's occupation as it is performed routinely in the labor market, rather than how a particular employee performed his or her job for a particular employee"); *Berges v. Standard Ins. Co.*, 704 F. Supp. 2d 1149, 1180-82 (D. Kan. 2010).  The *Bishop* court held that the insurer's failure "to address whether traveling was an essential duty of [the insured's] job at the time of his termination—as [the insured] claimed it was—rendered the decision arbitrary and capricious."  232 F. App'x at 795.  However, these cases did not involve plans that specifically defined "Regular Occupation" as the job as it is normally performed in the national economy.

In *Mason v. Reliance Standard Life Ins. Co.*, a case Plaintiff relies on heavily in her briefing for various positions, and in which her counsel was attorney of record, the court considered an identical argument with respect to policy language that defined "Regular Occupation" as "the occupation the Insured is routinely performing when Total Disability begins. We will look at the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer for a specific location." 2015 WL 5719648, at *6.  The *Mason* court determined that the defendant had in fact considered the plaintiff's job requirement that he travel, but, moreover, by the express terms of the policy, the defendant was not required to consider plaintiff's particular duties, and distinguished *Caldwell* and *Bishop* as cases in which the policy language did not include such express instruction.

I agree with the rationale in *Mason* and will defer to the express language of the Policy that an insured's occupation is defined by how it is normally performed in the national economy, and not by how the individual insured performs it. Moreover, the record reflects that the VRC took the travel requirement into consideration. *See* [#29 at 20]. Accordingly, I find that the VRC did not err in how he defined the duties of Plaintiff's position. And, Plaintiff does not challenge the VRC's determination that her occupation in the national economy is most consistent with Training Instructor. I find that Unum properly determined Plaintiff's own occupation, and remand is not warranted on this separate basis.

## CONCLUSION

For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that:

1. The Joint Motion for Determination on the Record [#38] be **GRANTED**; and

2. The court **REMAND** the decision to the Plan Administrator, consistent with the Recommendation herein.[11]

---

[11] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's

DATED: August 2, 2018                    BY THE COURT:

_____
United States Magistrate Judge

---

ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).